### INHABITANTS OF BARNSTABLE *vs* EDWARD THACHER & others.

He who is in actual possession of land may maintain trespass against any other person
except the real owner or him who has the right of possession.

Where two parties have a concurrent or mixed possession of land, neither having any
other title, nor any exclusive priority of possession, one of them cannot maintain
trespass against the other.

A town took possession of a tract of unenclosed land to which it had no title, and for-
bade all persons to take cranberries therefrom, except on terms which were prescrib-
ed by the town, and with which most persons complied for several years. Before the
town took possession, H. had claimed a right in the land, although he could not show
any title, and had taken cranberries growing thereon, and continued to take them af-
terwards, under a claim of right. *Held*, that the possession of H. and of the town
was mixed or concurrent, and that the town could not maintain trespass against per-
sons who took cranberries from the land under a license from H.

THIS was an action of trespass, brought against five defend-
ants, for breaking and entering the plaintiffs' close in Barnstable,
called Sandy Neck, and taking cranberries therefrom in Septem-

ber and October 1837. The defendants pleaded the general issue, and gave notice that they should defend on the ground that the possession of the *locus in quo* was in third persons, and also that the alleged entry, &c. were under a license from Edward B. Hallett, who claimed right.            -

At the trial, it appeared that the *locus in quo* is part of a neck of land, which extends five or six miles, between the sea and the salt marshes, from the line of the town of Sandwich to that part of the easterly end of the neck, which has been conveyed to the United States as a site for a lighthouse; and varying in width from 60 to 160 rods, and containing about 1100 acres; about 100 or 150 acres of which are woodland, about 20 acres are covered with cranberry vines, and the remainder is entirely barren.

It was proved or admitted that all the defendants entered, &c on the *locus*, as alleged in the plaintiffs' declaration.

The plaintiffs offered no paper title, but relied on their occupation and possession, as sufficient to enable them to maintain the action; and to prove such occupation and possession, they introduced evidence of the votes and acts of the town, and their officers and agents, from the spring of the year 1831 to the time of the alleged trespass. They showed, that in the spring of the year 1831, the town of Barnstable voted to take possession of the *locus*, and appointed a committee for that purpose; that the committee, thus appointed, and in pursuance of this authority, immediately entered and put up stakes about the tract, and placed notifications, on some of these stakes, that the town had taken possession, and forbidding all persons to enter thereon; that they also advertised, in the public papers in the county, that they had thus taken possession; that they, under the authority of the town, made certain regulations in regard to the picking of cranberries, fixing the day when they should be gathered, and requiring that each person gathering them should deliver a certain portion of what they should gather to the town; and published notice of such regulations, in the newspapers of the county; and also that they cleared out the cranberry bogs in several places, and set out cranberry vines, which soon greatly spread.

Between the year 1831 and the time of the commencement of this action, the town passed several votes in reference to this property, and in all cases the committee or agents of the town acted under the authority thus given them ; renewed the marks and stakes from time to time ; made regulations in regard to picking, as aforesaid, and published notice thereof from year to year in the newspapers of the county, therein forbidding all persons to take any of the products of Sandy Neck ; received, in several instances, a portion of the cranberries picked by persons on the land, pursuant to the aforesaid regulations ; and in one instance sold a small quantity of wood from the land, and from time to time cleared out the cranberry bogs, cutting off and removing the trees, &c., and set out, from time to time, cranberry vines in many places on the territory.

In the year 1833, the plaintiffs commenced an action against one Derrick, for a trespass committed on the *locus,* and recovered judgment against him, as by the record thereof will appear

The defendants showed that in the year 1715 the proprietors of the common lands in Barnstable divided Sandy Neck into lots, and assigned said lots to divers individuals to hold in severalty. It also appeared, that Edward B. Hallett had, for many years, as well before as since 1831, taken cranberries and beach plums from Sandy Neck, claiming a right in the soil and a right to pick them, and that he, before the trespass complained of, gave leave to three of the defendants, to go upon the *locus,* and pick cranberries.

The defendants denied that the town of Barnstable had ever had the exclusive possession and occupation of the premises since the year 1831, and offered evidence, that for many years sundry inhabitants of Yarmouth had been accustomed to pick cranberries and beach plums on Sandy Neck ; that before and since the year 1831, sundry inhabitants of Yarmouth and Barnstable had improved the premises by picking cranberries ; and offered evidence generally, to prove concurrent possession with the town of Barnstable.

The defendants also offered evidence that individuals in Barnstable had cut wood on the premises, as well since as before the

year 1831, claiming a right to the soil ; and one witness testified that he had a deed of a lot on Sandy Neck, but that he did not know, and never knew, where the lot was ; that he never entered upon it, and could not designate it.

After the evidence on both sides had been put in, the case was taken from the jury by consent of parties. "A default of all or any of the defendants, or a nonsuit, to be entered, as the opinion shall be on the whole case."

*Marston*, for the plaintiffs. The town has done all, which the nature of the case permits, to obtain possession of the *locus in quo ;* and *Cook* v. *Rider*, 16 Pick. 186, shows that their doings were sufficient for the purpose. A town may acquire a right to real estate as well as an individual. *Worcester* v. *Eaton*, 13 Mass. 371. Mere prior occupancy entitles one to maintain trespass against him who cannot show a better title. *Allen* v. *Rivington*, 2 Saund. 111. *Catteris* v. *Cowper*, 4 Taunt. 547. *Doe* v. *Reade*, 8 East, 356.

*J. Reed*, for the defendants. A town has no legal authority to take possession of vacant land, and can gain no right by so doing. Nor had the plaintiffs such a possession, in the present case, as entitles them to maintain trespass. It was, at most, a concurrent possession with others who claimed title. *Wickham* v. *Freeman*, 12 Johns. 183. *Stuyvesant* v. *Tompkins*, 9 Johns. 61. *Taylor* v. *Townsend*, 8 Mass. 415.

The former action of the plaintiffs against Derrick does not bind the present defendants. *Standish* v. *Parker*, 2 Pick. 20.

Wilde, J. This case depends on the question whether the plaintiffs have proved such a possession of the *locus in quo* as by law entitles them to maintain this action. To support an action of trespass *quare clausum*, it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the defendant. The action is founded merely on the possession, and it is not necessary for the plaintiff to show a right of property. He must prove such a lawful possession of the land as the defendant has no right to disturb ; but any possession is a legal possession against a wrong-doer. *Graham* v. *Peat*, 1 East, 246. *Lambert* v. *Stroother*, Willes, 221. *Harker* v. *Birkbeck*, 3 Bur

1563. Com. Dig. Trespass, B. 2. *Catteris* v. *Cowper*, 4 Taunt. 547. A person in the actual occupation of land may maintain trespass against any person except the real owner, or the person having a right of possession.

According to these well established principles, we are of opin on that the plaintiffs have proved such a possession of the *locus in quo* as entitles them to maintain trespass against any person, except against the right owner, or the person having a prior right of possession. To maintain an action of trespass, it is not necessary to have such a possession as amounts in law to a dis seizin.

In a case reported in 4 Leon. 184, and in Godb. 133, Anderson, C. J. says, "If one intrude upon the possession of the king, and another man entereth upon him, he shall not have an action of trespass for that entry ; for that he, who is to have and maintain trespass, ought to have a possession. But in such case, he hath not a possession ; for every intruder shall answer to the king for his whole time, and every intrusion supposeth the possession to be in the king." This doctrine is founded on the principle, that the king cannot be either disseized or dispossessed, and consequently the intruder cannot gain possession by his entry. The subsequent case of *Johnson* v. *Barret*, Aleyn, 10, is at variance with this doctrine ; which is also doubted by Bayley, J. in *Harper* v. *Charlesworth*, 4 Barn. & Cress. 589, 590. See also *Cutts* v. *Spring*, 15 Mass. 135. This doctrine, however, (as Lord Kenyon remarked, 1 East, 245,) has no bearing on a case like the present. It is an exception to the general rule, and is founded on the prerogative of the king, and public policy. The question therefore is, whether the defendants, in the present case, had a right to enter the premises and to do the acts complained of.

The defendants justify under a license from one Edward B. Hallett. The license proved, however, was given to three of the defendants only ; but as the defendants are charged as joint trespassers, the presumption is, that the other two defendants were assisting those to whom the license was given ; so that all the defendants were acting under the same license. Hallett, as ap

pears by the evidence, has for a long time claimed a right in the soil, and the right to pick cranberries on the premises. He claimed this right as one of the heirs of his father and grandfather ; but there was no proof that his father or grandfather had any title to the premises. It was proved, however, that under this claim of right he had from time to time, for forty years, picked cranberries on the premises, and had given license to others to pick ; that he never yielded to the claim and regulations of the plaintiffs, but continued to assert his right of possession, after the entry on the premises by them. This possession of Hallett, although it was not exclusive, but was concurrent with others, and would not avail in an action by the proprietors of the land, is nevertheless such a possession as the plaintiffs had no right to interrupt. When they entered in 1831, with the intent to obtain exclusive possession of the premises, and the right of regulating the picking of cranberries, they had no title nor pretence of title ; and as to Hallett, the town has acquired no better title since, so far as it relates to the exclusive right of picking cranberries. Hallett has resisted this claim, and has had concurrent possession with the plaintiffs, ever since they entered.

Now when two parties have a concurrent or mixed possession, and neither party has any other title, nor the exclusive priority of possession, neither party can maintain trespass against the other. We think, therefore, that as Hallett had prior possession, he had a right to maintain it, notwithstanding the entry and claim of the town ; and if he had entered claiming title, at the same time the town entered, and had continued to maintain concurrent possession, neither party, it seems, could maintain trespass. The town had no better right to regulate the picking of cranberries than any individual had.

Perhaps the town has had exclusive possession of the cranberry bogs cleared out, and planted with new vines by them ; but according to the evidence, the defendants did not enter upon those bogs. It is not necessary, therefore, to consider that question.

The counsel for the plaintiffs has referred to an action commenced by them in 1833, in which they recovered judgment

against one Derrick for a trespass on the same *locus*, similar to that now alleged against the defendants.

If I remember rightly, that case was defended on the ground of a custom for all the inhabitants of Barnstable and Yarmouth to pick cranberries on the *locus*, and the custom was decided, at the trial, not to be a good and valid custom. No question of law, however, was reserved in that case ; nor is it necessary now to decide whether such a custom be valid in law or not.

The privilege of picking wild berries in waste and unenclosed lands, without any express consent of the owner, has been extensively enjoyed, I apprehend, in every part of the country. And if the owner of the land might object to such a privilege, it does not follow that a stranger may, without right or title, take possession of the land for the purpose of depriving parties of a privilege to the enjoyment of which the owner does not object. On this question of privilege, however, we give no opinion, being satisfied that the other ground of defence is well sustained.

*Plaintiffs nonsuit*